## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

AARON L. KAISER,

      Petitioner,

v.                                                    Case No. 3:17-cv-387-J-32PDB

SECRETARY, FLORIDA
DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

---

## <u>ORDER</u>

### I. Status

Petitioner, Aaron L. Kaiser, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. <u>See</u> Doc. 1. He challenges a state court (Duval County, Florida) judgment of conviction for manslaughter, for which he is currently serving a fifteen-year term of incarceration. Respondents have responded. <u>See</u> Doc. 19; Response.[1] Petitioner declined to file a reply and instead relies on the allegations as set forth in his Petition. <u>See</u> Doc. 20. This case is ripe for review.

---

[1] Attached to the Response are numerous exhibits. <u>See</u> Doc. 19-1 through Doc. 19-8. The Court cites to the exhibits as "Resp. Ex."

## II.   Governing Legal Principals

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or

> argued to the state supreme court or obvious in the
> record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for
> evaluating state court rulings" and "demands that
> state-court decisions be given the benefit of the doubt."
> Renico v. Lett, 559 U.S. 766, 773 (2010) (internal
> quotation marks omitted). "A state court's
> determination that a claim lacks merit precludes
> federal habeas relief so long as fairminded jurists could
> disagree on the correctness of the state court's
> decision." Harrington v. Richter, 562 U.S. 86, 101
> (2011) (internal quotation marks omitted). "It bears
> repeating that even a strong case for relief does not
> mean the state court's contrary conclusion was
> unreasonable." Id. [at 102] (citing Lockyer v. Andrade,
> 538 U.S. 63, 75 (2003)). The Supreme Court has
> repeatedly instructed lower federal courts that an
> unreasonable application of law requires more than
> mere error or even clear error. See, e.g., Mitchell v.
> Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at
> 75 ("The gloss of clear error fails to give proper
> deference to state courts by conflating error (even clear

> error) with unreasonableness."); <u>Williams v. Taylor</u>,
> 529 U.S. 362, 410 (2000) ("[A]n unreasonable
> application of federal law is different from an incorrect
> application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal

citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254

habeas action in federal court, a petitioner must exhaust all state court

remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C.

§ 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]"

every issue raised in his federal petition to the state's highest court, either on

direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351

(1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners

must give the state courts one full opportunity to resolve any constitutional

issues by invoking one complete round of the State's established appellate

review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope</u>

<u>v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the

state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state
> prisoner must exhaust available state remedies, 28
> U.S.C. § 2254(b)(1), thereby giving the State the
> """opportunity to pass upon and correct" alleged

> violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[2] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[3] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to

---

[2] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[3] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

---

4 Murray v. Carrier, 477 U.S. 478 (1986).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases,

allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).  To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance.  Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other."  Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010).  Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa."  Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the

ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105.  As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see</u> <u>also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

# III. <u>Analysis</u>

## Ground One

Petitioner argues that the trial court's erroneous jury instruction on justifiable use of deadly force amounted to fundamental error.[5] Doc. 1 at 5. In support of that argument, Petitioner contends the trial court's use of Florida Standard Jury Instruction 3.6(f) provided conflicting directions with respect to Petitioner's duty to retreat. <u>Id.</u>; <u>see also</u> Resp. Ex. E.

Petitioner, with the help of appellate counsel, raised this issue as his sole claim on direct appeal. Resp. Ex. C. The state filed an answer brief arguing the First District Court of Appeal should not consider this claim because it was not preserved for appellate review, and even if the claim were properly preserved, it is nevertheless without merit. Resp. Ex. D. The First DCA per curiam affirmed Petitioner's judgment and sentence without a written opinion. Resp. Ex. F.

Respondents contend that Petitioner failed to fairly present the federal nature of this claim in the state court, and as such, his claim is unexhausted and procedurally defaulted.  Resp. at 19-21. They also assert that this claim is not cognizable on federal habeas review.

---

[5] Petitioner also briefly lists five ineffective assistance of trial counsel claims. Doc. 1 at 5. The Court addresses those claims in Ground Two <u>infra</u>.

Initially, to the extent Petitioner urges that the state court erred under Florida law when it instructed the jury on the standard instruction for justifiable use of deadly force, this assertion is not cognizable on federal habeas review. The Eleventh Circuit has explained:

> Federal habeas relief is unavailable "for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). A jury instruction that "was allegedly incorrect under state law is not a basis for habeas relief," id. at 71-72, because federal habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68. Unlike state appellate courts, federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, "'so infected the entire trial that the resulting conviction violate[d] due process.'" Id. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

Jamerson v. Sec'y for Dep't of Corr., 410 F.3d 682, 688 (11th Cir. 2005) (quoting Estelle, 502 U.S. at 72).

Further, to the extent Ground One can be liberally construed as a federal constitutional challenge, this claim is unexhausted because Petitioner did not present the federal nature of this claim to the state appellate court. When briefing this issue, Petitioner did not state or even suggest that it was a federal claim about due process or any other federal constitutional guarantee. Resp. Ex. C. Instead, Petitioner argued, in terms of state law only, that the trial court's instructions on justifiable use of deadly force were analogous to those

the First DCA found to be erroneous in <u>Floyd v. State</u>, 151 So. 3d 452 (Fla. 1st DCA 2014). Resp. Ex. C; <u>see also</u> Resp. Ex. E. According to Petitioner, the use of Standard Instruction 3.6(f) inconsistently informed the jury "that [Petitioner] did, and did not have, a duty to retreat"; and instead, "the jury should have been instructed that [he] did not have a duty to retreat if the use of deadly force was reasonably necessary to prevent death or great bodily harm to himself." Resp. Ex. C (citing Ch. 2005-27, Laws of Florida; <u>McWhorter v. State</u>, 971 So. 2d 154 (Fla. 4th DCA 2007); <u>Richards v. State</u>, 39 So. 3d 431 (Fla. 2d DCA 2010); <u>Williams v. State</u>, 982 So. 2d 1190 (Fla. 4th DCA 2008)). Petitioner failed to articulate and fairly present a federal constitutional claim in state court. As such, Ground One is unexhausted and procedurally defaulted, and Petitioner has failed to show cause for or prejudice from this procedural bar. He also has failed to demonstrate a fundamental miscarriage of justice.

In any event, assuming the federal nature of this claim was exhausted, it is still without merit. "Unlike state appellate courts, federal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, 'so infected the entire trial that the resulting conviction violate[d] due process.'" <u>Jamerson</u>, 410 F.3d at 688 (citation omitted). "If there is no basis in the record for the instruction given, such error may raise a 'substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations,' and reversal may

be required." Pesaplastic, C.A. v. Cincinnati Milacron Co., 750 F.2d 1516, 1525 (11th Cir. 1985) (quoting McElroy v. Firestone Tire & Rubber Co., 894 F.2d 1504, 1509 (11th Cir. 1990)). Petitioner' sole defense at trial was that the killing of Neville Barrett was excusable and was a justifiable use of deadly force. As such, upon defense counsel's request, the trial court instructed the jury using the standard instructions for justifiable use of force. Resp. Ex. B at 740-41, 834. While the First DCA found Standard Jury Instruction 3.6(f) conflicting and thus improper, the Florida Supreme Court quashed the First DCA's decision in Floyd, finding Standard Jury Instruction 3.6(f) accurately and correctly explains the "use of force by aggressor" exception to the justifiable use of deadly force defense. State v. Floyd, 186 So.3d 1013 (Fla. 2016). As such, the instruction was proper, and the Court cannot find that it so infected the entire trial that Petitioner's resulting conviction amounted to a due process violation. Ground One is due to be denied.

## B. Ground Two

Petitioner raises claims of ineffective assistance of trial counsel. Doc. 1 at 5, 7. For ease of reading, the Court groups the claims into three subsections.

### i. Prosecutorial Misconduct

First, Petitioner argues his trial attorney was ineffective for failing to object to the prosecutor's closing arguments regarding facts not in evidence; his personal opinion as to his witnesses' testimony; and shifting the burden of proof.

Doc. 1 at 5, 7; see also Resp. Ex. L at 1-29.[6] According to Petitioner, he was prejudiced by trial counsel's failure to object because it resulted in these errors not being preserved for appellate review. Id.

Petitioner raised these claims in grounds one and two of his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief. Resp. Ex. L. The state court denied the claims, finding in pertinent part:

> In claims one and two, Defendant contends that counsel was ineffective for failing to object to the State's misconduct during closing arguments. Defendant argues that, but for counsel's failure to object to the alleged misconduct, the issues would have been preserved for appeal, and there is a reasonable probability that the outcome would have been different.
>
> Claims of prosecutorial misconduct could and should have been raised on direct appeal and are procedurally barred from consideration in a postconviction motion. Spencer v. State, 842 So. 2d 52, 60 (Fla. 2003). Moreover, to the extent Defendant alleges prejudice by losing his right to appellate review, "failure to preserve issues for appeal does not show the necessary prejudice under Strickland." Strobridge v. State, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009). Prejudice must be assessed "based upon its effect on the results of the trial, not on its effect on appeal." Id. (citing Carratelli v. State, 961 So. 2d 312, 323 (Fla. 2007)). Defendant may not seek to avoid these procedural bars by couching his allegations in terms of ineffective assistance of counsel. See Arbelaez v. State, 775 So. 2d 909 (Fla. 2000) ("Arbelaez may not relitigate procedurally barred claims by couching them in terms

---

[6] The claims are articulated in grounds one and two of Petitioner's Rule 3.850 motion. Resp. Ex. L.

of ineffective assistance of counsel.") Thus, claims one
and two are denied.

Resp. Ex. L at 47. The First DCA per curiam affirmed the trial court's denial

without a written opinion. Resp. Ex. O. Applying deference to the First DCA's

adjudication, the Court finds that the state court's denial of Petitioner's

ineffective assistance of counsel claims, is not contrary to, nor an unreasonable

application of Strickland. See Carratelli v. Stepp, 382 F. App'x 829, 832 (11th

Cir. 2010) ("[T]here is no clearly established federal law by the Supreme Court

specifically addressing whether the federal court should examine the prejudice

on appeal rather than at trial in a case [where the alleged prejudice pertains to

the appeal rather than at trial]."). Nor did the state court unreasonably

determine the facts in light of the evidence presented to the court.

Nevertheless, even if the First DCA's adjudication is not entitled to

deference, this claim is still without merit. A reviewing court must evaluate an

allegedly improper comment in the context of both the prosecutor's entire

closing argument and the trial as a whole, because "[c]laims of prosecutorial

misconduct are fact-specific inquiries which must be conducted against the

backdrop of the entire record." United States v. Hall, 47 F.3d 1091, 1098 (11th

Cir. 1995); accord United States v. Young, 470 U.S. 1, 11 (1985) ("[A] criminal

conviction is not to be lightly overturned on the basis of a prosecutor's comments

standing alone, for the statements or conduct must be viewed in context; only

by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

First, Petitioner argues trial counsel should have objected when the prosecutor, speaking about eyewitness Mercedes Wright's testimony, stated during closing arguments, "You saw a picture where you could see from her doorstep straight out to the street, and she goes up to the end of the streetlight out there." Resp. Ex. B at 762.  Petitioner contends these were facts not in evidence as Wright never testified she went all the way outside to the streetlight.

At trial, Wright testified that around 8:00 p.m. on the night of the incident, she was sitting in her apartment when she heard an argument transpiring outside. Resp. Ex. B at 333. While she testified, the prosecutor showed her pictures of her apartment complex, and Wright explained she opened the front door and stood in the open doorway to get a better view of who was arguing. Id. at 335. She stated that from her doorway, she could clearly see Petitioner and another neighbor, Neville Barrett, arguing outside. Id. at 336-38. Wright testified Petitioner and Barrett were not physically fighting or touching one another as they argued. Id. at 339. She stated that Barrett started to walk away but then turned back around once Petitioner continued yelling. Id. Wright said that Barrett's girlfriend, Sabra Vaughan, then attempted to stop the altercation, but when she was unsuccessful, Vaughan went back inside.

16

According to Wright, she then saw Petitioner pull out a gun and shoot Barrett three times. Id. at 340. After being shot, Barrett began walking toward Wright and asked her to call 911 while Petitioner turned around and walked home. Id. at 343-45. Wright testified she was outside for the entire incident. Id. at 341. While there was no evidence that Wright walked all the way to the streetlight once she walked outside, the record did support the prosecutor's argument that she had a clear view of the shooting because she was standing in the open doorway of her apartment. Based on this testimony, the Court finds the prosecutor's closing statements were a proper summary of Wright's testimony, and any isolated misstatement did not render Petitioner's trial unfair.

Next, Petitioner argues that trial counsel should have objected when the prosecutor improperly stated during closing that Petitioner testified he and the victim "fell" when Petitioner never made such a statement. Resp. Ex. L at 11; Resp. Ex. B at 780. However, at trial Petitioner testified Barrett "rushed" him and "[o]nce [Petitioner] fell back, just a little bit, [Petitioner] discharged [his] weapon." Resp. Ex. B at 669. The prosecutor's closing merely summarized Petitioner's trial testimony; and thus, counsel was not deficient for failing to object.

Petitioner also argues trial counsel should have objected to the prosecutor's closing statement that Wright "has no reason to take the stand and make stuff up willy-nilly." Resp. Ex. L at 13. According to Petitioner, this

17

argument improperly bolstered Wright's credibility. Improper bolstering occurs when a prosecutor makes personal assurances about a state witness' credibility or implies that facts not before the jury support the state witness' testimony. See United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991). Improper bolstering violates due process if its admission renders the trial fundamentally unfair. Snowden v. Singletary, 135 F.3d 732, 737 (11th Cir. 1998). "A denial of fundamental fairness occurs whenever the improper evidence 'is material in the sense of a crucial, critical, highly significant factor.'" Id. (quoting Osborne v. Wainwright, 720 F.2d 1237, 1238 (11th Cir. 1983)). Here, the prosecutor made this comment in his closing before he summarized Wright's trial testimony. Resp. Ex. B at 761-62. The prosecutor's argument was also in response to defense counsel's cross-examination of Wright, in which he challenged her credibility about whether she could clearly see what transpired between Petitioner and Barrett. Id. at 352. In context, the record reveals that the prosecutor's statements were neither patently improper nor prejudicial, thus, counsel was not ineffective for failing to object.

Finally, Petitioner argues the prosecutor made the following improper statement during his first closing argument: "I get one more argument after counsel goes, about self-defense. He has to exhaust every reasonable means to assert self-defense." Resp. Ex. B. at 757. Petitioner also argues the prosecutor made the following improper statement during his rebuttal: "I spoke to you in

my first argument. I said exhaust every reasonable means. Did he – let's – ask yourself the question, did he exhaust every reasonable means?"  Petitioner acknowledges that trial counsel objected to each of these statements as being a "misstatement of the law," and he recognizes that after each objection, the trial court gave a curative instruction that what the attorneys argue during closing is not evidence and that it will instruct the jury on the law. Id. at 757, 820. However, Petitioner argues counsel should have also argued that the statements were an improper shifting of the burden of proof. Nevertheless, the statement which Petitioner now challenges was a direct quote of the initial aggressor instruction for justifiable use of deadly force. Resp. Ex. B at 842. In context, the Court finds that the prosecutor's comments were not an improper shifting of the burden of proof, but rather directly related to Petitioner's defense at trial. The record reveals that the prosecutor's statements were neither patently improper nor prejudicial and this claim is due to be denied.

### ii. Victim's Clothing

Petitioner argues his trial counsel was ineffective for failing to test the victim's clothing as evidence to support Petitioner's defense. Doc. 1 at 5. He raised this claim in his Rule 3.850 motion. Resp. Ex. L at 18-23. After providing an in-depth summary of the evidence presented at trial, the trial court summarily denied the claim as follows:

In claim three, Defendant contends that, but for counsel's failure to investigate the victim's clothing for evidence of gunshot residue, there is a reasonable probability that the result of the trial would have been different. Defendant argues that evidence of gunshot residue on the victim's clothes would have supported his theory of self-defense because it would show that he shot the victim at close range after being attacked by the victim. Defendant avers that the gunpowder residue evidence would have been critical to his self-defense theory because his trial testimony (that the victim attacked him) was not corroborated by other witnesses, and it conflicted with the testimony of State witness Mercedes Wright that she saw Defendant shoot the victim and the victim had not physically attacked Defendant.

Initially, this Court notes that Defendant's claim merely speculates that an investigation of the victim's clothing would lead to a finding of gunpowder residue. Speculation cannot form the basis for postconviction relief. See Spencer v. State, 842 So. 2d 52, 63 (Fla. 2003); see also Bass v. State, 932 So. 2d 1170, 1172 (Fla. 2d DCA 2006) ("[P]ure speculation cannot be a basis for postconviction relief."). Generally, a court must grant leave to amend a facially or legally insufficient claim within a reasonable period of time. Spera v. State, 971 So. 2d 754 (Fla. 2007). However, Spera does not apply if the court determines that the record conclusively refutes Defendant's claim. See Taylor v. State, 120 So. 3d 540, 551 (Fla. 2013) ("[B]ecause the record conclusively refutes Taylor's claim, Spera does not apply."). Nor does it apply when the defect cannot be remedied by amendment. See Harris v. State, 10 So. 3d 714, 715 (Fla. 2d DCA 2009)(affirming summary denial of post-conviction motion, despite the post-conviction court's failure to grant leave to amend, because the record conclusively showed that Harris would not be entitled to relief even if he were permitted to amend his deficient motion).

Here, this Court need not grant Defendant leave to amend his claim because he would not be entitled to relief even if he were permitted to amend his motion. Assuming arguendo that the victim's clothes would have tested positive for gunpowder residue, such evidence would not reasonably have changed the outcome of the trial because it would not have given any weight to Defendant's testimony that the victim attacked him first. It would have only supported the notion that the gun was fired relatively close to the victim. Medical Examiner Aurelian Nicolaescu testified about gunpowder residue and stippling. He testified as follows: stippling normally occurs when the barrel of a gun is within two to three feet of the gunshot wound, but the most accurate distance would be known after a test firing of the same gun with the same ammunition; he did not see evidence of stippling or soot on the body; he did not see any stippling on either of the victim's wounds to his hand or groin; clothing would prevent stippling from appearing on the body; the victim's hand was not covered by clothing; he did not examine the victim's bloody clothes that covered the gunshot to the victim's groin; he did not see evidence that either of the victim's hands had been used to strike anything; he could not give any opinion as to the distance between Defendant and the victim, during the shooting, if one of them were moving at the time the gun was fired. (Ex. B at 579-89.) Therefore, had the victim's clothes tested positive for gunpowder residue, it would have shown only that the gun was fired at close range. It would not have overcome eyewitness testimony that the victim did not physically attack Defendant just prior to the shooting.

[Sabra] Vaughan, the victim's fiancé and Defendant's neighbor at the time of the shooting, testified as follows: she saw Defendant and the victim arguing in the parking lot outside her apartment; they were facing each other and far apart from each other; after failing to separate the two, she returned to her apartment to call 911 but heard gunfire before she

could reach her cell phone; and she did not see either of the men throw a punch or kick. (Ex. B at 239-42, 250-59.)

Jeremy Hamlin, [Sabra] Vaughan's nephew and Defendant's neighbor at the time of the shooting, testified as follows: he saw Defendant and the victim arguing outside his apartment; Defendant was following the victim as he walked around; at no point did he see Defendant and the victim fighting; they were more than twenty feet away from each other when Mr. Hamlin turned away and walked back inside; seconds later, he heard three gunshots; he did not hear footsteps or the sound of someone running or any sound of physical altercation between them. (Ex. B at 277, 287-314.)

Obneil Vertus testified as follows: he was helping move furniture when he heard a man and woman arguing; shortly after, he heard three gunshots; he did not see the actual shooting take place; and he did not hear any sounds of fighting. (Ex. B at 316-25.)

Mercedes Wright, Defendant's neighbor at the time of the shooting, testified as follows: she saw Defendant and the victim arguing; they were not fighting or touching in any manner; she saw Defendant pull out a gun and shoot the victim; Defendant and the victim were never closer than five-to-six feet apart and were further away from each other than the length of two arms; she heard three gunshots; she watched the entire incident; and the victim had not rushed up to Defendant just prior to the shooting. (Ex. B at 330-53.)

Mirnez Gazic and Geoffrey Liedke were officers with the Jacksonville Sheriff's Office and testified as follows: they took Defendant into custody after the shooting; Defendant was not disheveled; he showed no signs of having been attacked; and he did not have any bloody marks or abrasions (Ex. B at 622-27.)

Of all the trial witnesses, only Defendant testified that he and the victim were close to each other in distance just prior to the shooting and that the victim had attacked him. Defendant testified as follows: the victim physically pushed Defendant, hit him one time (in the jaw), and repeatedly rushed at him; Defendant fell back and fired his gun; the victim was roughly two-to-three feet from him at the time he fired his gun; and the victim kept approaching, so Defendant kept stepping back and firing. (Ex. B at 639; 662-70; 693; 708-1 1.)

Upon consideration of all the trial evidence, and assuming arguendo that the victim's clothing would have tested positive for gunpowder residue, this Court finds that the residue would have shown only that the gun was fired at close range. Moreover, this Court finds that gunpowder residue would not have conflicted with the testimony of several witnesses who stated that the victim was not attacking Defendant in any way prior to the shooting. Therefore, Defendant cannot show prejudice because it is unreasonable that the result of the trial would have been different if counsel investigated the gun residue. Accordingly, Defendant's third claim is denied.

Resp. Ex. L at 49-53. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. O.

Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim because he failed to demonstrate prejudice from any alleged deficiency is neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state circuit court. See 28 U.S.C. § 2254(d). This claim is due to be denied.

### iii. Impeach Mercedes Wright's Testimony

Petitioner also contends his trial counsel was ineffective for failing to impeach Wright's testimony with other photographs showing she did not see the incident from her vantage point. Doc. 1 at 5. Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. L at 23-27. The trial court denied the claim, in pertinent part, as follows:

> In claim four, Defendant contends that counsel was ineffective for failing to fully develop evidence that would contradict the testimony of State witness Mercedes Wright. Defendant argues that the record reflects that evidence was available to demonstrate that Ms. Wright's ability to observe the shooting from her vantage point was impaired by a wall, shrubbery, trees, and cars. Defendant argues that counsel should have used aerial photographs to show how her line of sight was obstructed. Defendant asserts that, but for counsel's failure to investigate, there is a reasonable probability that the result of the trial would have been different.

> Initially, this Court notes that there is nothing in the record that corroborates Defendant's claim that Ms. Wright's view was obstructed. Defendant's argument, that the State's brief mention of a wall equates to evidence that the wall obstructed Ms. Wright's view, is purely speculative. (Def.'s Mot. at 25; Ex. B at 334.) Likewise, Defendant's argument that aerial photographs would show Ms. Wright's view was obstructed is based on mere speculation. Speculation cannot form the basis for postconviction relief. As stated above, a court need not grant a defendant leave to amend a legally insufficient claim when the record conclusively refutes that claim. See Taylor, 120 So. 3d at 551. Moreover, if an amendment cannot remedy the

defect, the court need not grant leave to amend. <u>See</u> <u>Harris</u>, 10 So. 3d at 714, 715.

> This Court will not grant Defendant leave to amend his claim because he would not be entitled to relief even if he were permitted to amend. Defendant's arguments are as much unreasonable as they are speculative. The State used photographs of the apartment complex at trial, and witnesses used a computer to mark the digital photographs to explain to the jury where and how events occurred. (Ex. B, <u>passim</u>.) There was no evidence that Ms. Wright's view was obscured by trees, shrubs, cars, or a wall. Furthermore, it is unreasonable that Ms. Wright's perspective and vantage point would have been better represented by aerial photographs as opposed to ground-based photographs. Thus, Defendant has failed to show prejudice because it is unreasonable that aerial photographs would have resulted in a different outcome at trial. Accordingly, Defendant's fourth claim is denied.

Resp. Ex. L at 53-54. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. O.

Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts in light of the evidence presented in the state circuit court proceeding.  <u>See</u> 28 U.S.C. § 2254(d). This claim is due to be denied.

### Ground Three

Petitioner argues that during his appeal of the trial court's denial of his Rule 3.850 motion, the trial court failed to provide the appellate court with record attachments "refuting" his claims.[7] Doc. 1 at 8. He also appears to argue the trial court failed to provide the appellate court with photos "refuting" his argument that Wright did not have a clear vantage point of the incident. Id.

To the extent Petitioner again argues that counsel should have impeached Wright's trial testimony with photos demonstrating she did not have a clear view of where the attack occurred, the Court relies on its denial of Ground Two supra. To the extent Petitioner argues the trial court failed to attach portions of the record supporting its denial of Petitioner's Rule 3.850 motion, such claim is not cognizable on federal habeas review. See Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (argument that the state court failed to attach relevant portions of the record to refute Rule 3.850 motion does not undermine validity of the petitioner's conviction, and thus, does not state a basis for habeas relief). As such, Ground Three is due to be denied.

### Ground Four

Lastly, Petitioner argues the postconviction court failed to provide him an opportunity to file an amended Rule 3.850 motion before denying his claims.

---

[7] The Court assumes Petitioner means to argue that the state court failed to attach portions of the record supporting the denial of his claims.

Doc. 1 at 7. The postconviction court denied Petitioner's Rule 3.850 motion on the merits and found that any amendment was not required under Florida law because it would not have affected the outcome of his postconviction proceedings. See generally Resp. Ex. L at 53-54 (citing Spera, 971 So. 2d at 754). Petitioner's claim that the Florida court made errors in his postconviction proceedings solely addresses Florida law and does not include any federal constitutional infirmity. Such claims that do not present a constitutional challenge to the validity of Petitioner's judgment and sentence are not cognizable on federal habeas review. See, e.g., Rolack v. Jones, No. 15-CV-22270-WILLLIAMS, 2016 WL 10707030, at *27 (S.D. Fla. Nov. 2, 2016) (holding the petitioner' claim that state postconviction court failed to allow him leave to amend his Rule 3.850 motion not cognizable on § 2254 habeas review). As such, Ground Four is due to be denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability.    Because the Court has determined that a certificate of

appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[8]

   **DONE AND ORDERED** at Jacksonville, Florida, this 10th day of September, 2020.


TIMOTHY J. CORRIGAN
United States District Judge


Jax-7
C:   Aaron Kaiser, #549083
       Anne Catherine Conley, Esq.

---

   [8] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

28